# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMOTHY BARKER, | Case No. 20-CV-2362 (NEB/KMM) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS |
| QUICKEN LOANS, LLC, | |
| Defendant. | |

Timothy Barker filed for bankruptcy and listed his house as an asset. Quicken Loans, LLC, his mortgage servicer, reviewed the filing, conducted an escrow analysis, and filed a proof of claim with the Bankruptcy Court. Quicken Loans then charged Barker $950 in fees for the work it had done in connection with the bankruptcy. Barker, believing that these fees were unreasonable, contacted Quicken Loans in an effort to reduce or remove the fees. Quicken Loans never responded. Barker then filed this lawsuit, alleging that Quicken Loans violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, breached the mortgage contract, and violated a Minnesota law banning the use of false or deceptive statements in connection with mortgage lending. Quicken Loans moved to dismiss. The Court dismisses Barker's RESPA and mortgage lending claims, but denies the motion to dismiss Barker's breach of contract claim.

# BACKGROUND

## I. The Bankruptcy and the QWR

Barker filed for Chapter 13 bankruptcy and listed his house as an asset in that proceeding. (ECF No. 1-1 at 4–13[1] ("Compl.") ¶¶ 9–10.) Barker had timely made all his payments, so the loan was not in default when he filed for bankruptcy. (*Id.* ¶ 11.) As a result of the filing, Quicken Loans reviewed the bankruptcy plan, conducted an escrow analysis on Barker's mortgage, discovered a future shortage in the account's balance, and imposed $950 in fees for its work. (*Id.* ¶¶ 12–14.)

After Quicken Loans assessed the fees, Barker's counsel sent to Quicken Loans a Qualified Written Request ("QWR") under RESPA Section 2605(e). The QWR sought information about the fees and asserted that they were unreasonable and not allowed under the mortgage contract. (*Id.* ¶ 15; *see* ECF No. 1-1 at 32–33 ("QWR").) Quicken Loans never responded to the QWR. (Compl. ¶¶ 16–17.)

## II. Procedural Background

Barker initially filed this case in state court, but Quicken Loans removed it on November 20, 2020. (ECF No. 1.) In the Complaint, Barker brings four claims: Count I alleges that Quicken Loans violated RESPA by failing to correct a wrongful service charge (Compl. ¶¶ 32–37); Count II charges Quicken Loans with engaging in a pattern or practice of charging unreasonable fees, also in violation of RESPA (*Id.* ¶¶ 38–45); Count III alleges

---

[1] The Court uses ECF pagination unless otherwise noted.

2

that Quicken Loans breached the mortgage contract by charging unreasonable fees (*Id.* ¶¶ 46–51); and Count IV asserts that Quicken Loans violated the Minnesota Mortgage Originator and Servicer Licensing Act ("MOSLA"), Minn. Stat. Section 58.13, by making "false, deceptive, or misleading representations" related to the mortgage loan by wrongly charging unreasonable fees. (*Id.* ¶¶ 52–55.) Quicken Loans seeks to dismiss all four claims. (ECF No. 6.)

## ANALYSIS

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). At this stage in the litigation, the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). Factual allegations in the Complaint must be sufficient to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). "'[T]hreadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a

presumption of truth" when considering a Rule 12(b)(6) motion. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (*en banc*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court's determination of whether a plaintiff has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Id.* (quotation omitted).

### II. Failure to Respond to a QWR

RESPA requires that a loan servicer respond to a QWR in one of three ways: (1) correct the account and tell the borrower that it has made the correction; (2) conduct an investigation and explain to the borrower why the servicer thinks that the account is correct; or (3) after investigation, give the borrower the requested information or explain why it is unavailable. *Wirtz v. Specialized Loan Serv'g, LLC*, 886 F.3d 713, 715 (8th Cir. 2018) (citing 12 U.S.C. § 2605(e)). If the servicer does not respond to a QWR, the borrower "is entitled to 'any actual damages . . . as a result of the failure.'" *Id.* (quoting 12 U.S.C. § 2605(f)(1)(A)). To prevail on a RESPA claim, the plaintiff must show actual damages[2] because those damages are the "only relief available" on such a claim. *Id.* at 718–19. In addition, RESPA requires that the damages be incurred "as a result of the failure." 12 U.S.C. § 2605(f)(1)(A); *Wirtz*, 886 F.3d at 719. "Congress's use of the phrase 'as a result of'

---

[2] And, in certain circumstances, "additional damages." *Wirtz*, 886 F.3d at 718–19. Without actual harm, a servicer's breach of duty under RESPA does not state a claim. *Id.* at 719.

4

dictates that 'there must be a "causal link" between the alleged the alleged violation and the damages.'" *Wirtz*, 886 F.3d at 719 (quotation omitted).

Barker's claim fails because the Complaint fails to allege facts supporting his theory that he sustained actual damages as a result of Quicken Loans' failure to respond to his QWR. Barker argues that the failure to respond caused him to incur the $950 in fees as damages. (ECF No. 13 at 2–6.) This argument is without merit, because it ignores the fact that Quicken Loans imposed the fees before Barker sent the QWR in the first place. (Compl. ¶¶ 14–15.) Barker has not suffered any damages "as a result of [Quicken Loans'] failure" to address the QWR.[3] 12 U.S.C. § 2605(f)(1)(A).

Said another way, a failure to acknowledge or respond to a QWR is a violation of RESPA, but charging unreasonable fees is not per se a violation. 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower . . . ."); *see generally* 12 U.S.C. § 2601 *et seq.* (containing no provisions explicitly making the imposition of unreasonable fees unlawful). Under Barker's theory, a borrower could bootstrap a failure to respond to a QWR onto an earlier unreasonable fee

---

[3] The case that Barker cites against this conclusion, *Bakko v. Quicken Loans, Inc.*, 358 F. Supp. 3d 800 (D. Minn. 2018), does not persuade the Court to deviate from its conclusion. The facts in *Bakko* are similar (the plaintiff alleged damage as a result of Quicken Loans' failure to correct a charge after receiving a QWR), and the court concluded that the plaintiffs had "sufficiently alleged damages under RESPA." *Id.* at 805. *Bakko*, however, did not address how the plaintiff had suffered damages as a result of Quicken Loans' failure to acknowledge or respond to the QWR, rather than damages as a result of the fee imposed. Absent such analysis, the Court declines to follow *Bakko*.

5

charge and use that fee as the damages hook for a RESPA claim. But RESPA Section 2605(f) does not grant a private right of action for unreasonable fees—it grants a right of action for damages caused by a mortgage servicer's failure to respond to or acknowledge a QWR. The failure to respond to a QWR does not pull in, as damages, fees imposed prior to the QWR being sent to the servicer, even when those fees were the impetus for the borrower sending the QWR. *See Jackson v. Caliber Home Loans*, No. 18-cv-4282 (NG) (CLP), 2019 WL 3426240, at *8 (E.D.N.Y. July 30, 2019) ("[T]o the extent plaintiff was emotionally injured, she 'cannot disentangle the distress that was occasioned by the loan modification into which she voluntarily entered from that which may have been occasioned by Defendant's failure to respond fully to any of her requests for information . . . and for this reason has not alleged actionable emotional distress damages.'") (quoting *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 275 (S.D.N.Y. 2017)).

Barker has failed to allege causation because he has not pled that he suffered any damages apart from those that he identified in the QWR; those damages necessarily predate Quicken Loans' failure to acknowledge or respond to the QWR (the alleged RESPA violation) and that violation did not cause his alleged damages.[4] The Court dismisses Count I without prejudice.

---

[4] In making this conclusion, the Court is not concluding that Barker suffered no damages, only that he has not alleged that he suffered damages *as a result of* Quicken Loans' failure to acknowledge or respond to the QWR.

6

### III. Pattern and Practice of Unreasonable Fees

Barker's second claim is that, in addition to failing to respond to his QWR in violation of RESPA, Quicken Loans has a pattern and practice of doing so, a practice that also violates RESPA. (Compl. ¶¶ 38–45.) Barker makes these allegations "on information and belief." (*Id.* ¶¶ 39–40.) Quicken Loans argues that these allegations are insufficient to give rise to a pattern and practice claim. (ECF No. 8 at 8–9.)

To allege a pattern and practice claim, a plaintiff must allege that "noncompliance with [RESPA] 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Wirtz*, 886 F.3d at 720 (quotation and citation omitted). Although Barker asserts that his *counsel* has the information and belief on which he brought the allegations, (ECF No. 13 at 6–7), there is nothing in the Complaint indicating what his counsel has been informed of or believes: there are no pattern and practice allegations in the Complaint itself.

Instead, all that Barker alleges is a single RESPA violation: failure to respond to a QWR—a claim the Court has already determined fails. *See supra*, Section II. And a single instance of conduct cannot give rise to a RESPA pattern and practice claim. *Melillo v. GMAC Mortg., LLC*, No. 10-CV-3392 (ADM/LIB), 2011 WL 96629, at *3 (D. Minn. Jan 11, 2011) ("As a matter of law, alleging only two violations of RESPA does not form a pattern or practice."); *see Wirtz*, 886 F.3d at 720 (holding that a plaintiff must allege that the servicer's violations are "the company's standard operating procedure") (quotation

omitted). Because Barker has only alleged one instance of Quicken Loans violating RESPA, his pattern and practice claim fails. The Court dismisses Count II without prejudice.

IV.     **Breach of Contract**

With regard to Barker's breach of contract claim, the sole issue before the Court is whether Barker complied with his mortgage's notice-and-cure provision prior to filing suit. (The breach alleged is the purported unreasonable fee that was the subject of the QWR.) Section 20 of the mortgage provides that neither party to it can bring a lawsuit arising "from the other party's actions pursuant to [the mortgage] or that alleges that the other party has breached any provision of, or any duty owed by reason of [the mortgage]" until that party has given the other notice of the alleged breach and an opportunity to cure.[5] (ECF No. 9-1 at 13.) Quicken Loans argues that Barker has not pled that he gave it notice and that the QWR does not suffice because it "provides no indication that [Barker] believed Quicken Loans had breached any provision of the mortgage." (ECF No. 8 at 10.) Barker, on the other hand, contends that the QWR "spelled out the reasons" why he "thought the fees were unreasonable" and therefore why Quicken Loans had breached the mortgage. (ECF No. 13 at 7.)

---

[5] Section 20 specifies that any notice given under it must comply with Section 15, which requires written notice. (ECF No. 9-1 at 12, 13.)

Under Minnesota law,[6] a contract may contain a notice-and-cure provision. *Surgical Principals, Inc. v. Minn. Med. Dev., Inc.*, No. A13-0694, 2014 WL 1660662, at *5 (Minn. Ct. App. Apr. 28, 2014). When a contract contains such a clause requiring written notice (like Barker's mortgage), no party may bring a breach of contract claim without first complying with that provision. *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 365 (Minn. 2009).

Barker has adequately pled that he gave notice through the QWR. The QWR states that Barker "asserts that [Quicken Loans has] made the following errors in the servicing" of the mortgage, including "wrongly charg[ing] attorney's fees [that are] unreasonably high . . . [and] exceed . . . reasonableness guidelines . . . . The loan was not in default at the time, and therefore the fee provision in the agreement was not invoked." (QWR at 32.) The QWR, taken with the allegations in the Complaint, plausibly alleges that Barker complied with the mortgage's notice-and-cure provision and therefore placed Quicken Loans on notice of Barker's assertion of breach.

## V. MOSLA Violation

Generally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). But when the complaint alleges fraud, a higher standard applies: the complaint must "state with

---

[6] Minnesota law governs Barker's mortgage. (ECF No. 9-1 at 12 ("[The mortgage] shall be governed by . . . the law of the jurisdiction in which the Property is located.").)

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although the complaint must set forth the "who, what, when, where, and how surrounding the alleged fraud," a plaintiff need not allege the "precise details of every instance of fraud." *In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*, 364 F. Supp. 3d 976, 987 (D. Minn. 2019) (quotation omitted). The complaint must allege sufficient facts to inform the defendant of the core facts for the fraud claims. *Id.* Rule 9(b)'s purpose is to permit the defendant to adequately respond to, and prepare a defense for, allegations of fraud. *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

Barker alleges that Quicken Loans violated MOSLA "by making false, deceptive, or misleading representations in connection with the mortgage loan when it wrongly stated that [Barker] owed $950 in fees. . . ." (Compl. ¶ 53.) Although the Complaint identifies the "who" of the allegedly fraudulent conduct—Quicken Loans—it does not plead the other elements with particularity. Barker argues that the "what" of the fraud is charging unreasonable fees, (ECF No. 13 at 8), but fails to identify how the fees constitute a "false, deceptive, or misleading" statement. Even assuming that the fees are unreasonable, Quicken Loans did not make a false statement by charging Barker the fees—Quicken Loans actually charged the fees, it did not say it charged the fees and then did not, or say it would not charge fees and then did. The Complaint similarly fails to

detail the "where" and "how" elements of fraud. Barker has not pled fraud with particularity and the Court therefore dismisses Count IV without prejudice.

## VI. Jurisdiction

The final remaining issue is the Court's jurisdiction. Although neither party challenges it, the Court has an independent obligation to assure itself of its jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). The Court had jurisdiction over the Complaint prior to dismissing claims because Barker's RESPA claims arise under federal law and his state law claims are part of "the same case or controversy," so the Court had supplemental jurisdiction over those. 28 U.S.C. §§ 1331, 1367. After dismissing Barker's federal claims, however, there is no longer a federal hook for his breach-of-contract claims and the Court must assess whether there is another basis on which to keep the case.

There is. The Court has jurisdiction over Barker's remaining breach of contract claim because it relates to a case under Title 11 (the bankruptcy code)—Barker's bankruptcy petition. 28 U.S.C. § 1334(b). Section 1334(b) gives district courts "original but not exclusive" jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* For a claim or proceeding to be "related to" bankruptcy cases, it must "have some effect on the administration of the debtor's estate." *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987) (quotation omitted). The test is whether "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d

Cir. 1984)); *see Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 (1995) (adopting *Pacor*). Related suits include those "between third parties which have an effect on the bankruptcy estate," *Celotex Corp.*, 514 U.S. at 307 n.5, and those that "'could alter the debtor's rights, liabilities, options or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Dogpatch*, 810 F.2d at 786 (quoting *Pacor*, 743 F.2d at 994 (alteration original)).

Barker's claim could conceivably have an effect on his bankruptcy estate because damages that he recovers would flow to the estate. *Celotex Corp.*, 514 U.S. at 307 n.5 ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate . . . ."); 11 U.S.C. § 541 (listing the contents of a bankruptcy estate). These damages could alter Barker's "rights, liabilities, options or freedom of action" and impact "the handling and administration of the bankrupt estate." *Dogpatch*, 810 F.2d at 786 (quotation omitted); *see In re Farmland Indus., Inc.*, 567 F.3d 1010, 1020 (8th Cir. 2009) (citing *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996) (holding that claims against non-debtor defendants were "related to" the bankruptcy because the non-debtors had claims against the bankruptcy petitioner)). The Court therefore retains jurisdiction over Barker's state law claim as it is "related to" his bankruptcy petition.

**ORDER**

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Quicken Loans' Motion to Dismiss (ECF No. 6) is GRANTED IN PART;

2. Counts I, II, and IV of the Complaint (ECF No. 1-1) are DISMISSED WITHOUT PREJUDICE; and

3. Quicken Loans' Motion to Dismiss is DENIED in all other respects.

Dated: May 7, 2021                                BY THE COURT:

                                                                             s/Nancy E. Brasel
                                                                             Nancy E. Brasel
                                                                             United States District Judge